UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARIM KHOJA, on behalf of himself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>OREXIGEN THERAPEUTICS, INC., JOSEPH P. HAGAN, MICHAEL A. NARACHI, and PRESTON KLASSEN,<br><br>                                    Defendants.<br>_____<br>AND ALL CONSOLIDATED CASES | Case No.: 15-CV-540 JLS (JLB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOVING DEFENDANTS' REQUEST TO CONSIDER MATERIALS INCORPORATED BY REFERENCE, AND (2) GRANTING MOVING DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>(ECF No. 114) |

Presently before the Court is Moving Defendants Joseph P. Hagan, Michael A. Narachi, and Preston Klassen, M.D., M.H.S.'s Partial Motion to Dismiss Consolidated Amended Complaint for Violation of the Federal Securities Laws ("Mot.," ECF No. 114),[1] as well as Lead Plaintiff Karim Khoja's Opposition to ("Opp'n," ECF No. 115) and Moving Defendants' Reply in Support of ("Reply," ECF No. 116) the Motion.

---

[1] Defendant Orexigen Therapeutics, Inc., filed a voluntary petition for bankruptcy under Chapter 11, *see In re Orexigen Therapeutics, Inc.*, No. 18-10518-KG (Bankr. D. Del. filed Mar. 12, 2018); consequently, pursuant to the automatic bankruptcy stay, *see* 11 U.S.C. § 362(a), Orexigen is not a party to this Motion, which was filed before the automatic stay was lifted.

Also before the Court are Moving Defendants' Request to Consider Documents Incorporated by Reference into the Consolidated Amended Complaint for Violation of the Federal Securities Laws in Support of Defendants' Partial Motion to Dismiss ("Defs.' Req.," ECF No. 114-9), Lead Plaintiff's Notice of Supplemental Authority in Support of Opposition to Defendants' Partial Motion to Dismiss the Consolidated Amended Complaint ("1st Not. of Supp. Auth.," ECF No. 118), Moving Defendants' Response to Lead Plaintiff's Notice of Supplemental Authorities ("Resp. to 1st Not. of Supp. Auth.," ECF No. 119), Lead Plaintiff's Notice of Supplemental Authorities in Support of Opposition to Defendants' Partial Motion to Dismiss the Consolidated Amended Complaint ("2d Not. of Supp. Auth.," ECF No. 126), Moving Defendants' Response to Lead Plaintiff's Notice of Supplemental Authorities ("Resp. to 2d Not. of Supp. Auth.," ECF No. 127), Lead Plaintiff's Third Notice of Supplemental Authorities in Support of Opposition to Defendants' Partial Motion to Dismiss the Consolidated Amended Complaint ("3d Not. of Supp. Auth.," ECF No. 128), Lead Plaintiff's Notice of Recent Controlling Authority ("4th Not. of Supp. Auth.," ECF No. 136), Moving Defendants' Response to Lead Plaintiff's Notice of Recent Controlling Authority ("Resp. to 4th Not. of Supp. Auth.," ECF No. 137), and Lead Plaintiff's Reply to Defendants' Response to Lead Plaintiff's Notice of Recent Controlling Authority ("Reply ISO 4th Not. of Supp. Auth.," ECF No. 138).

The Court vacated the hearing and took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 117. Having carefully considered Lead Plaintiff's Consolidated Amended Complaint ("CAC," ECF No. 111) and the material appropriately incorporated by reference, the Parties' arguments, and the law, including the cases identified in Lead Plaintiff's Notices of Supplemental Authority, the Court **GRANTS IN PART AND DENIES IN PART** Moving Defendants' Request to Consider Documents Incorporated by Reference and **GRANTS** Moving Defendants' Motion.

/ / /

# BACKGROUND[2]

The factual and procedural background of this case was set forth in detail in this Court's September 23, 2019 Order (1) Granting in Part and Denying in Part the Moving Defendants' Request for Judicial Notice, (2) Denying Lead Plaintiff's Request for Judicial Notice, and (3) Granting in Part and Denying in Part the Moving Defendants' Motion to Dismiss. *See* ECF No. 110 at 2–14.  To the extent relevant, the Court incorporates that recitation into this Order.  Accordingly, the Court sets forth below only those facts relevant to the instant Motion[3] and the procedural history since the issuance of this Court's September 23, 2019 Order.

## I.    Factual Background

Orexigen, "a developmental stage biotechnology firm," has a collaboration agreement with Takeda Pharmaceutical Company Limited ("Takeda") to develop and commercialize Orexigen's "primary product candidate," a drug for the treatment of obesity called Contrave, in the United States, Canada, and Mexico.  CAC ¶ 7.  Phase III clinical trials have been completed, and Contrave "was being studied in a drug trial known as the

---

[2] The facts alleged in Plaintiff's Consolidated Amended Complaint are accepted as true for purposes of Moving Defendants' Motion.  *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").  The Court also considers those materials outside the Consolidated Amended Complaint that are properly incorporated by reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2615 (2019); *see also infra* pages 7–12.

[3] The Parties agree that the sole issue raised by the present Motion is whether "the Amended Complaint fails to plead with particularity that Defendants' allegedly fraudulent statements on March 3, 2015 have any casual connection to the losses purportedly suffered by Plaintiff on May 12, 2015."  ECF No. 114 ("Not. of Mot.") at 1; *see also* Opp'n at 1 ("Defendants do, however, suggest that Plaintiff has not adequately pled loss causation in connection with the May 12, 2015 announcement that Takeda Pharmaceutical Co. ("Takeda") — Orexigen's own business partner — disclosed for the first time that it was initiating a $200 million claim against Orexigen due to Defendants' misconduct in revealing the 25% data LIGHT Study in the March 3, 2015 Form 8-K.").  Although several of the new or revised allegations in the Consolidated Amended Complaint ("CAC") are intended to strengthen Lead Plaintiff's loss causation allegations as to Defendants' May 8, 2015 statements, "[Moving] Defendants did not challenge the Original Complaint on this ground, and do not challenge the adequacy of Plaintiff's loss causation allegations as to the May 8 statements here."  Mot. at 2.  Accordingly, the Court omits those facts from its recitation of the relevant facts.

LIGHT Study." *Id.* The Light Study's Executive Steering Committee, Data Monitoring Committee, and Orexigen entered into a data access plan ("DAP"), pursuant to which all agreed to limit the number of people within Orexigen who had access to the interim results of the LIGHT Study to just those individuals who needed to facilitate submission of Orexigen's marketing application to the United States Food and Drug Administration ("FDA"). *Id.* ¶ 53 & n.11.

On July 2, 2014, Orexigen filed patent application number 14/322,810 (the "'810 Application"), which "included specific quantitative 25% interim LIGHT Study data," "pursuant to a statutory 'nonpublication' request." *Id.* ¶ 12. In early January 2015, Orexigen rescinded the nonpublication request. *Id.* ¶ 14. On March 3, 2015, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 8,969,371 (the "'371 Patent") from the '810 Application. *Id.* ¶ 15; *see also* Defs.' Req. Ex. B.

That same day, Orexigen filed a Form 8-K with the United States Securities and Exchange Commission ("SEC") announcing the publication of the '371 Patent and releasing the 25 percent interim LIGHT Study results. CAC ¶¶ 15, 87; *see also* Defs.' Req. Ex. C. The Form 8-K noted that the '371 Patent "incorporate[d] data from [the LIGHT Study]," and that the '371 Patent "contain[s] claims related to a positive effect of Contrave on [cardiovascular ("CV")] outcomes" based on an "analysis . . . conducted based on 94 observed and adjudicated major adverse cardiovascular events ("MACE"), which was approximately 25% of the planned MACE for the Light Study." CAC ¶ 87; *see also* Defs.' Req. Ex. C. The Form 8-K further explained that the interim analysis "was prospectively designed to enable an early and preliminary assessment of safety to support regulatory approval" and that "[a] larger number of MACE are required to precisely determine the effect of Contrave on CV outcomes." *Id.* Orexigen did not consult the FDA, Dr. Nissen, or Takeda prior to filing the Form 8-K. CAC ¶ 15.

Also on March 3, 2015, *Forbes* released an article reporting that the FDA had been unaware that the '810 Application contained the interim data and was "very disappointed by Orexigen's actions." *Id.* ¶ 93. That same day, Orexigen issued a press release stating

that "the USPTO published the patent and supporting documentation," *id.* ¶ 94, but the press release failed to disclose that "the USPTO only published what Orexigen itself needlessly put into the 2014 Patent Application" or that Orexigen "had rescinded its earlier request that the 2014 Patent Application remain unpublished," *id.* ¶ 95.

On March 2, 2015, Orexigen's common stock had closed at $5.79 per share. *Id.* ¶ 89. However, the March 3, 2015 publication of the "misleading" interim LIGHT Study data and the "misleading" response to the FDA's statements the same day "artificially inflat[ed] the price of Orexigen's securities" and "deceiv[ed] analysts and investors." *Id.* ¶¶ 17, 97. That same day, common stock shares "soared almost 32% to close at $7.64 . . . on enormous trading volume of more than 95.8 million shares," *id.* ¶ 16, with trading as high as $9.37 per share, *id.* ¶ 89. On March 4, 2015, Orexigen common stock "rose an additional 11% on massive volume, to close at $8.49 per share." *Id.* ¶ 16; *see also id.* ¶ 97.

In Section VI of the CAC, titled "Loss Causation and Economic Loss," Lead Plaintiff alleges, in relevant part:

> 131. On May 12, 2015, it was also disclosed for the first time in a *Bloomberg* article, called "Takeda Threatened to End Orexigen Partnership as Study Halted," that Takeda – Orexigen's commercialization partner for Contrave – had initiated dispute resolution proceedings against Orexigen demanding it pay the full cost – estimated at $200 million – of a new cardiovascular outcomes trial due to Orexigen's materially misleading March 3, 2015 statements and omissions regarding Contrave's purported heart benefit. In a May 12, 2015 email to *Bloomberg*, Takeda spokesperson Sandy Rodriguez stated that "Takeda sent a dispute letter to Orexigen on May 12 whereby Takeda seeks termination of its collaboration agreement with Orexigen based on Orexigen's material breach of the agreement …" A May 13, 2015 article appearing in the *Wall Street Journal* titled "Orexigen and Takeda Feud Over Cost of a Controversial Diet Drug Trial" confirmed, *inter alia*, that: "[t]he **disclosure is causing Orexigen shares to drop**, since the cost of the trial is estimated to be about $200 million, according to RBC Capital Markets analyst Simos Simeonidis, who calculates that Orexigen would be on the hook for as much as an extra $100 million if it loses the dispute."

Similarly, a May 13, 2015 article appearing in *Biospace.com* added that "the company stock took a big hit, dropping from a high of $6.93 per share on May 12, the day the partnership [with Takeda] was terminated, to today's low [on May 13, 2015] of $5.48 per share."

132.   As a direct result of the May 12, 2015 disclosures alleged in ¶[ . . .] 131, *supra*, which disclosed the truth for the first time regarding: . . . (iii) Takeda's initiation of a $200 million action against Defendants (which revealed for the first time that Defendants had failed to disclose that they had filed the March 3, 2015 Form 8-K revealing the dubious 25% heart benefit data without first informing Takeda as alleged in ¶¶15-17, 87-89, *supra*) the price of Orexigen's common stock fell from an opening price on May 11, 2015 of $6.75 per share to close on May 13, 2015 at $5.02 per share on massive trading volume as investors digested the full impact of Defendants' materially misleading statements and deliberately reckless acts. Together, the revelations and disclosures alleged in ¶[ . . .] 131, *supra* caused the Company's share price to drop approximately 25% in a single day between May 12 and May 13, 2015 on unusually high trading volume.

133.   The timing and magnitude of Orexigen's common stock price declines between May 12 and May 13, 2015 negates any inference that the losses suffered by Plaintiff and the other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated to Defendants' fraudulent conduct. The Company's share price dropped from a high of $6.93 per share on May 12, 2015 to a low of $5.48 per share on May 13, 2015 – a sharp decline of approximately 25%. The Company's share price never recovered and Orexigen was thereafter delisted from NASDAQ. Chapter 11 bankruptcy later ensued.

CAC ¶¶ 131–33 (emphasis in original); *see also id.* ¶ 5 (alleging that "the loss causing disclosures on May 12, 2015 revealed the truth to the market about Defendants' materially false and misleading statements and omissions on March 3, 2015 . . . ."); *id.* (""In response

/ / /

to the disclosures on . . . May 12, 2015, Orexigen's share price fell precipitously.") (citing *id.* § VI).

## II.   Procedural Background

On September 23, 2019, this Court issued its Order (1) Granting in Part and Denying in Part the Moving Defendants' Request for Judicial Notice, (2) Denying Lead Plaintiff's Request for Judicial Notice, and (3) Granting in Part and Denying in Part the Moving Defendants' Motion to Dismiss.  *See* ECF No. 110.  As relevant to the pending Motion, the September 23, 2019 Order determined that a May 12, 2015 press release authored by Dr. Nissen "was not a corrective disclosure as to the alleged misrepresentations from March 3, 2015," and accordingly Lead Plaintiff had failed to adequately allege loss causation for a portion of his claims.  *Id.* at 37–38.

On October 17, 2019, Lead Plaintiff filed his CAC.  *See* ECF No. 111.  On November 15, 2019, Moving Defendants filed the instant Motion.  After briefing was complete, Lead Plaintiff filed four notices of supplemental authority on January 24, May 27, June 12, and October 12, 2020.  *See* ECF Nos. 118, 126, 128, 136.  Moving Defendants filed responses to the first, second, and fourth.  *See* ECF Nos. 119, 127, 137.

Meanwhile, on April 28, 2020, the Ninth Circuit issued an order lifting the administrative closure of the appeal as to Orexigen and substituting Wind-Down Administrator Province, Inc., in the place and stead of Orexigen as Defendant-Appellee. *See* ECF No. 125.  On May 19, 2020, in light of the bankruptcy court's lifting of the § 362 automatic stay, the Ninth Circuit issued an order "fully adopt[ing its] opinion in [*Khoja v.*] *Orexigen* [*Therapeutics, Inc.*], 899 F.3d 988 [(9th Cir. 2018)], to resolve Plaintiff's appeal as against Defendant Orexigen."  *See* ECF No. 134 at 3.  The Ninth Circuit's judgment took effect on June 10, 2020.  *Id.* at 1.

## REQUEST TO CONSIDER MATERIALS INCORPORATED BY REFERENCE

## I.   Legal Standard

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil

Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'" *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (citing *Lee*, 250 F.3d at 689).

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431(7th Cir. 1993)). "'[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Khoja*, 899 F.3d at 1002 (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). Nonetheless, a document may still form the basis of the plaintiff's claim where "the claim necessarily depended on the[ document]." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.*

When a document is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for

purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("The court may treat . . . a document [incorporated by reference] as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'") (citing *Ritchie*, 342 F.3d at 908). Nonetheless, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

## II.   Analysis

Moving Defendants ask the Court to incorporate by reference six documents:

(1)   "Food and Drug Administration's ('FDA') September 10, 2014 'Center for Drug Evaluation and Research Summary Review,' which is publicly available at https://www.accessdata.fda.gov/drugsatfda_docs/nda/2014/200063Orig1s000SumR.pdf (the '2014 FDA Review')," "for background facts about the Light Study and the FDA's regulatory process with respect to Contrave," Defs.' Req. at 1, 4; *see id.* Ex. A;

(2)   "United States Patent No. 8,969,371, which is publicly available at http://portal.uspto.gov/pair/PublicPair (the ''371 patent')," "for background facts about Orexigen's U.S. patent application and the issuance of the '371 patent," Defs.' Req. at 1, 4; *see id.* Ex. B;

(3)   "Orexigen Therapeutics, Inc.'s ('Orexigen') Form 8-K filed with the Securities Exchange Commission ('SEC') on March 3, 2015, which is publicly available at http://www.sec.gov/edgar/searchedgar/companysearch.html (the 'March 3 8-K')," "so the Court has a complete picture of the information provided to investors on March 3, 2015," Defs.' Req. at 1, 4–5; *see id.* Ex. C;

(4)   "Carlone Chen's www.bloomberg.com article on May 12, 2015, titled 'Takeda Threatens to End Orexigen Partnership as Study Halted,' which is available at https://www.bloomberglaw.com/document/NO9IEU6JTSE8 (the 'May 12 Bloomberg Article')," on which Moving Defendants purport Lead Plaintiff relies "to form the basis of his new loss causation theory," Defs.' Req. at 1, 5 (citing CAC ¶¶ 131, 132); *see id.* Ex. D;

(5)   "Ed Silverman's www.wsj.com article on May 13, 2015, titled, 'Orexigen and Takeda Feud Over Cost of a Controversial Diet Drug Trial,' which is publicly

available at https://blogs.wsj.com/pharmalot/2015/05/13/orexigen-and-takeda-feud-over-cost-of-a-controversial-diet-drug-trial/ (the 'March 13 WSJ Article')," on which Moving Defendants purport Lead Plaintiff relies "to form the basis of his new loss causation theory," Defs.' Req. at 2, 5 (citing CAC ¶¶ 131, 132); *see id.* Ex. E; and

(6)   "Alex Keown and Riley McDermid's www.biospace.com article on May 13, 2015, titled, 'Takeda Threatens to End Orexigen Partnership Over Stopped Obesity Study,' which is publicly available at https://www.biospace.com/article/takeda-threatens-to-end-orexigen-partnership-over-stopped-obesity-study-/ (the 'May 13 BioSpace Article')," on which Moving Defendants purport Lead Plaintiff relies "to form the basis of his new loss causation theory," Defs.' Req. at 2, 5 (citing CAC ¶¶ 131, 132); *see id.* Ex. F.

Lead Plaintiff argues that Moving Defendants impermissibly are "offering these exhibits for the truth of the underlying facts they contain," Opp'n at 19, because, for example, the language from the March 3, 2015 8-K cited in Moving Defendants' Motion "is the ***same language*** that Defendants relied on to argue that the statements they made on March 3 were not false – a theory which was squarely rejected by the Ninth Circuit," and accordingly "[i]t is unclear why Defendants would have cited to this language ***if not*** to try to impermissibly contradict Lead Plaintiff's well-pled allegations," *id.* (emphasis in original) (citing Mot. at 5; *Khoja*, 899 F.3d at 1003, 1010). Lead Plaintiff further "disputes that incorporating Ex. F is permissible, as it is only referred to briefly and for the prospect that Takeda's disclosure caused Orexigen's stock price to fall." *Id.* (citing CAC ¶ 131). Lead Plaintiff argues that, if incorporation of these articles is proper, the incorporation "does not extend to Defendants' factual conclusions or characterizations of their content," *id.* at 19–20 (citing *Khoja*, 899 F.3d at 1006), and thus "asking the Court to incorporate a conclusion that these articles 'do not suggest any connection' between Defendants' March 3, 2015 misleading statements and Takeda's, *Bloomberg's* and the *Wall Street Journal's* disclosures . . . goes 'beyond testing the sufficiency of the claims and into the realm of factual disputes,'" *id.* at 20 (quoting *Khoja*, 899 F.3d at 1006; citing CAC ¶ 131).

/ / /

The Court previously has incorporated by reference Exhibits A through C. *See* ECF No. 76 at 18; ECF No. 110 at 18–19. In its September 23, 2019 Order, the Court found that incorporation by reference of Exhibits A and B, for the same purposes offered here, was proper. *See* ECF No. 110 at 18. The Court again finds incorporation by reference proper for Exhibits A and B. With regard to Exhibit C, the Court's September 23, 2019 Order noted that Lead Plaintiff's "Consolidated Complaint refers extensively to the March 3, 2015 Form 8-K, *see, e.g.*, CC ¶¶ 87–88, which also forms the basis of Lead Plaintiff's claims predicated upon false and misleading omissions in that very filing. *See, e.g.*, *id.* ¶¶ 87–92." ECF No. 110 at 18. The Court concluded that, "[a]lthough 'what inferences [the C]ourt may draw from [the] incorporated document should . . . be approached with caution,' *see Khoja*, 899 F.3d at 1003, Exhibit C is appropriately incorporated by reference." ECF No. 110 at 18–19. The Court again finds it appropriate to incorporate Exhibit C by reference, but the Court will not incorporate into the CAC any statements therein offered solely to contest any well-pleaded facts in the CAC.

As for Exhibits D through F, the Court finds that Lead Plaintiff relies on the May 12, 2015 *Bloomberg* article to form the basis of his loss causation theory, and therefore the Court concludes that it is appropriate to incorporate by reference Exhibit D. Again, the scope of the Court's incorporation by reference will exclude "Defendants' factual conclusions or characterizations of" the document. *See* Opp'n at 19–20. However, the Court agrees with Lead Plaintiff that it is not appropriate to incorporate Exhibits E and F by reference. The CAC does not refer extensively to these documents, nor does Lead Plaintiff rely on them to form the basis of his claim. As the Ninth Circuit has stated, "[f]or 'extensively' to mean anything under *Ritchie*, it should, ordinarily at least, mean more than once." *See Khoja*, 899 F.3d at 1003 (citing *Coto*, 593 F.3d at 1038). "Otherwise, the rule would simply require a complaint to 'refer' to the document. In theory, a reference may be sufficiently 'extensive' if a single reference is relatively lengthy." *Id.* However, the CAC only refers to each of Exhibits E and F once, and then only for the proposition that

/ / /

the share prices dropped on May 13, 2015. *See* CAC ¶ 131. Thus, the Court sees no reason to incorporate these ancillary documents by reference.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Moving Defendants' Request to Consider Documents Incorporated by Reference (ECF No. 114-9), as outlined above.

## PARTIAL MOTION TO DISMISS

### I.   Legal Standard

Rule 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to

relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Further, "[c]laims brought under Rule 10b-5 . . . must meet Federal Rule of Civil Procedure 9(b)'s particularity requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1016 (S.D. Cal. 2006) (alteration in original) (quoting Fed. R. Civ. P. 9(b)) (citing *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005), *cert. denied* 546 U.S. 1172 (2006); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999)). "In addition, in 1995, Congress enacted the Private Securities Litigation Record Act of 1995 (PSLRA) and altered the pleading requirements in private securities fraud litigation by requiring a complaint plead with particularity both falsity and scienter." *Id.* at 1016–17 (quoting *Daou Sys.*, 411 F.3d at 1014) (internal quotation marks omitted).

The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II. Analysis

"Section 10(b) of the . . . 1934 [Act] forbids (1) the 'use or employ[ment] . . . of any . . . deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' [SEC] 'rules and regulations.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (quoting 15 U.S.C. § 78j(b)). "Rule 10b-5 forbids, among other things, the making of any 'untrue statement of a material fact' or the omission of any

material fact 'necessary in order to make the statements made . . . not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b-5). "The basic elements of a Rule 10b-5 claim, therefore, are: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Daou Sys.*, 411 F.3d at 1014 (citing *Dura Pharms.*, 544 U.S. at 341–42).

Although Moving Defendants claim that their Motion is directed solely to the issue of loss causation, in actuality, the Motion argues that Lead Plaintiff's CAC fails to adequately plead several of the required elements of a claim for securities fraud. Primarily, Moving Defendants assert that Lead Plaintiff has not adequately pleaded loss causation in

> alleg[ing] that investors learned on May 12, 2015 that Takeda Pharmaceutical Co. Ltd. ("Takeda")—Orexigen's commercial partner in conducting the Light Study—initiated a "$200 million action" against Defendants which purportedly revealed for the first time that Orexigen disclosed the data underlying the patent on March 3 without notifying Takeda in advance.

Mot. at 2 (citing CAC ¶ 132) (footnote omitted). However, Moving Defendants also argue that Lead Plaintiff fails to plead falsity adequately, because Defendants had no duty to inform investors that the March 3, 2015 8-K was filed without first informing Takeda. *Id.* at 12 (citing CAC ¶ 132). Moving Defendants further claim that the CAC contains no allegations to support the materiality of the allegedly misleading statement or omission. *Id.* at 13–14 (citations omitted).[4]

---

[4] In a footnote, Moving Defendants assert a fourth argument, that "[t]he Amended Complaint is also bereft of allegations that Defendants intended to deceive or were deliberately reckless in failing to inform investors that Takeda allegedly did not have advance notice of the March 3 8-K. Thus, any such claim should also be dismissed for failure to plead scienter." Mot. at 14 n.12 (citing *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)). Similarly, Lead Plaintiff responds to the argument in a single sentence in a footnote in his Opposition. Opp'n at 14 n.7.

The Court declines to address this argument, which was not fully briefed by the Parties. "'Arguments raised only in footnotes, or only on reply, are generally deemed waived' and need not be considered." *Cheever v. Huawei Device USA, Inc.*, No. 18-CV-06715-JST, 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019) (citing *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014); *Sanders v. Sodexo, Inc.*, No. 2:15-cv-00371-JAD-GWF, 2015 WL 4477697, at *5 (D. Nev. July 20, 2015) ("Many courts will

### A.      Material Misrepresentation or Omission of Fact

The Court will first address Moving Defendants' argument that Lead Plaintiff fails to plead a material misrepresentation or omission of fact.  Mot. at 12.  A statement or omission is misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'"  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).  With regards to an omission, "[d]isclosure is required . . . only when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading."  *Khoja*, 899 F.3d at 1009 (internal quotation marks and citations omitted).  Thus, "companies can control what they have to disclose under these provisions by controlling what they say to the market."  *Id.* (citations and internal quotation marks omitted).  "But once defendants [choose] to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information."  *Id.* (citations and internal quotation marks omitted) (alterations in original).

"[A]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  "[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Id.* at 231–32 (quoting *TSC Indus.*, 426 U.S. at 449).  "At a minimum, '[p]laintiffs' allegations must suffice to raise a reasonable expectation that discovery will reveal evidence satisfying the materiality requirement, and to allow the court to draw the reasonable inference that the defendant is liable.'"  *Khoja*, 899 F.3d at 1009 (quoting *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d at 794).

disregard arguments raised exclusively in footnotes." (quoting Bryan Garner, *The Redbook: A Manual on Legal Style* 168 (3d ed. 2013)))).

1    Moving Defendants argue that "Plaintiff cannot establish falsity, because
2    Defendants had no duty to inform investors that Orexigen filed the March 3 8-K 'without
3    first informing Takeda.'"  Mot. at 12 (quoting CAC ¶ 132).  Moving Defendants analogize
4    to Lead Plaintiff's former claim that Defendants misled investors by failing to disclose that
5    Orexigen had violated the DAP on March 3, 2015, which information the Ninth Circuit
6    determined Defendants had no duty to share "'because Orexigen never touted having
7    permission to publish' the 25% data on that date."  Mot. at 13 (quoting *Khoja*, 899 F.3d at
8    1011).  Finally, Moving Defendants argue that, even if any statement or omission were
9    actionable, it must also be material, but "the [CAC] contains no allegations to suggest that
10   a reasonable investor would even care" about Orexigen's alleged failure to give Takeda
11   advance notice of the March 3, 2015 8-K.  Mot. at 13 (footnote omitted).

12   Lead Plaintiff argues that this argument "conflates the standards for evaluating
13   whether a defendant has a duty to disclose material information with those for proximate
14   cause."  Opp'n at 13.  While it is true, as this Court noted *supra* at 14, that this argument
15   does not relate to loss causation, purportedly the only subject of Moving Defendants'
16   Motion,[5] a material misrepresentation or omission of fact is nonetheless a required element
17   of a claim for securities fraud that Lead Plaintiff must plead in order to state a claim, and
18   Lead Plaintiff was put on notice of this argument by Moving Defendants' thorough
19   treatment of the issue in their opening brief.  *See* Mot. at 12–14.  Indeed, Lead Plaintiff's
20   Opposition contains a section titled "Defendants' Violation of Their Duty Not to Mislead
21   the Public Has Been Established and is Law of the Case."  Opp'n at 13. However, the
22   section bearing this heading is largely devoted to the reasonable foreseeability of Takeda's
23   decision to seek termination of its partnership with Orexigen in light of the alleged March
24   3, 2015 omissions, *id.*, and concedes that the Ninth Circuit "found that Defendants did not
25   have a duty to disclose that it had violated the DAP," *id.* (citation omitted).

26
27
_____

28   [5] *See, e.g.*, Not. of Mot. at 1 (indicating Moving Defendants move for dismissal in part of the CAC "for failure to plead loss causation").

The Court agrees with Moving Defendants that Lead Plaintiff fails to plead adequately this element of his claim, to the extent it is premised on the May 12, 2015 *Bloomberg* article correcting any misleading statements or omissions from March 3, 2015. Although Lead Plaintiff alleges that "Orexigen filed the Form 8-K without first consulting with the FDA, Dr. Nissen or its own business partner, Takeda," CAC ¶ 15, Lead Plaintiff does not allege that Moving Defendants had a duty to disclose their failure to provide Takeda with advance notice, nor can the Court plausibly infer from the allegations in the CAC that such a duty existed. Rather, the Court agrees with Moving Defendants that this scenario is similar to Lead Plaintiff's unsuccessful attempt to plead that it was misleading for Defendants to fail to disclose that the publication of the 25% LIGHT Study data violated the DAP. In dismissing this theory, the Ninth Circuit reasoned:

> Although Orexigen touted the interim results and therefore created a duty to disclose the corresponding adverse information, Orexigen never touted having permission to publish the results. Even though violating the DAP could have negative consequences for Orexigen (and its investors), Orexigen did not have a duty to share that information. The Complaint does not identify earlier statements by Orexigen that suggest a duty either.

*Khoja*, 899 F.3d at 1011. Similarly, here, Lead Plaintiff does not allege that Orexigen touted that it had informed Takeda of its intention to publish the 25% LIGHT Study data, or that Takeda had approved of its decision to do so. Absent a duty to disclose, there is no actionable misleading omission. And, while Defendants' duty to disclose that the 25% LIGHT Study data were unreliable is certainly law of the case, Defendants' duty to disclose whether or not they had told Takeda of their intention to disclose those data is not. Accordingly, Lead Plaintiff fails to state a claim to the extent he relies on Moving Defendants' failure to disclose that they did not inform Takeda in advance of their intention to file the March 3, 2015 8-K.[6]

---

[6] In light of the Court's finding that Lead Plaintiff fails to state a claim due to his failure adequately to allege a misrepresentation or omission, the Court need not address the materiality of the same.

15-CV-540 JLS (JLB)

## B.    Loss Causation

The Court next addresses Moving Defendants' argument that Lead Plaintiff fails to adequately plead loss causation.  Mot. at 10–12.  To demonstrate loss causation, a plaintiff must allege "a causal connection between the material misrepresentation and the loss." *Dura Pharms.*, 544 U.S. at 342; *see also* 15 U.S.C. § 78u-4(b)(4).  The Ninth Circuit recently held that, to plead loss causation

> by relying on one or more corrective disclosures, a plaintiff must show that: (1) a corrective disclosure revealed, in whole or in part, the truth concealed by the defendant's misstatements; and (2) disclosure of the truth caused the company's stock price to decline and the inflation attributable to the misstatements to dissipate.  At the pleading stage, the plaintiff's task is to allege with particularity facts "plausibly suggesting" that both showings can be made.

*In re BofI Holding, Inc. Sec. Litig.*, No. 18-55415, __ F.3d __, 2020 WL 5951150, at *6 (9th Cir. Oct. 8, 2020) (citing *Twombly*, 550 U.S. at 557; *Oregon Public Employees Retirement Fund v. Apollo Group, Inc.*, 774 F.3d 598, 605 (9th Cir. 2014)).  Although Rule 9(b)'s heightened pleading standard applies to allegations of loss causation, "[t]hat effort 'should not prove burdensome,' for even under Rule 9(b) the plaintiff's allegations will suffice so long as they give the defendant 'notice of plaintiffs' loss causation theory' and provide the court 'some assurance that the theory has a basis in fact.'"  *Id.* at *8 (quoting *Dura Pharms.*, 544 U.S. at 347; *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 989–90 (9th Cir. 2008)).

Moving Defendants argue that Lead Plaintiff fails to allege that the disclosures in the May 12, 2015 *Bloomberg* article correct any allegedly false or misleading statement appearing in the March 3, 2015 8-K.  Mot. at 10–12.  Specifically, Moving Defendants argue that only two statements from March 3, 2015 "remain at issue": (1) the failure to reveal in the March 3, 2015 8-K that the 25% LIGHT Study results were "unreliable," and (2) Defendants' failure to disclose in the March 3, 2015 press release their role in

/ / /

publishing the '371 patent.[7]  Mot. at 10.  Moving Defendants contend that Lead Plaintiff does not allege that these statements were false or misleading "*because* of anything Defendants said about Takeda, or because of any omission related to Takeda."  *Id.* at 10–11 (emphasis in original) (citing CAC ¶¶ 92, 95, 98).  Moving Defendants further argue that,

> even if there was a statement on March 3 to tie back to, the May 12 articles that disclose Takeda's initiation of dispute proceedings against Orexigen do not actually reveal that "Defendants had failed to disclose" that Orexigen filed the March 3 8-K "without first informing Takeda."  Thus, Plaintiff has not even pleaded an alleged corrective disclosure in the first place.  Indeed, those articles do not suggest any connection whatsoever between Takeda's claims for breach of the collaboration agreement and Orexigen's alleged failure to provide advance notice of the March 3 8-K.

*Id.* at 11 (citing CAC ¶¶ 131–32; Exs. D, E, F).  Finally, even if such a connection were established, Moving Defendants claim, analogizing to cases addressing the revelation of litigation or investigations, that the mere allegation that "Takeda had sued Orexigen for 'material breach' based on Orexigen's failure to give notice of the March 3 8-K" is inadequate, standing on its own, to establish loss causation. *Id.* at 12 n.9 (citations omitted).

Lead Plaintiff responds that:

> The May 12, 2015 disclosures make clear for the first time that Takeda wanted to dissolve its partnership with Defendants based on "Orexigen's material breach of the agreement."  The facts before the Court strongly suggest that this breach relates back to Defendant's unilateral decisions to: (i) publish the unreliable 25% interim data; and (ii) hide their role in getting the patent published.  These allegations are "inextricably linked" with Takeda's announcement that they were seeking to dissolve their partnership with Orexigen and leave them with the entire cost of the subsequent safety [*sic*].

---

[7] Lead Plaintiff appears to agree that these two statements from March 3, 2015 are the only ones relevant to the loss causation issue. *See, e.g.*, Opp'n at 16.

15-CV-540 JLS (JLB)

Opp'n at 16 (citing CAC ¶ 131; *In re Silver Wheaton Corp. Sec. Litig.*, 2019 U.S. Dist. LEXIS 59428, at *40 (C.D. Cal. 2019)).  Thus,

> Defendants' decision to publicize the unreliable 25% interim data is the proximate cause of: (i) the LIGHT Study's cancellation; (ii) the FDA's warning that Contrave might be pulled from the market; and (iii) Takeda's decision to institute dispute resolution proceedings.  Since Takeda had known since late 2014 that the FDA would require another safety study, there is no other reason that it would have resorted to such aggressive tactics at that time.  Moreover, Defendants do not offer one here.

*Id.* at 17 (citing CAC ¶¶ 55, 126).  Lead Plaintiff argues that Moving Defendants' analogy to government investigation cases is inapt because an announcement of an investigation with something more, such as a corrective disclosure, can establish loss causation, and "[h]ere, Takeda's announcement, along with the news that [the] LIGHT Study had been terminated prematurely, and following Dr. Jenkins' March 5 warning 'gave investors the context necessary to interpret [Takeda's disclosure] as revealing the fraud.'"  *Id.* at 18 (citing *Evanston Police Pension Fund v. McKesson Corp.*, 2019 U.S. Dist. LEXIS 188308, at *44 (N.D. Cal. 2019)) (third alteration in original).

Furthermore, according to Lead Plaintiff, the May 12, 2015 *Bloomberg* article's disclosure of Takeda's actions "was a reasonably foreseeable consequence" of Orexigen's duty to disclose the unreliability of the 25% interim LIGHT Study data in the March 3, 2015 8-K.  *Id.* at 13 (citing *Khoja*, 899 F.3d at 1012–13).  Thus, the Ninth Circuit's analysis of the DAP issue in *Khoja* supports his argument because, although the Ninth Circuit found no duty to disclose the alleged violations of the DAP, "it identified potential violations (and thus, the attendant risks) as a reasonably foreseeable outcome of their March 3, 2015 misstatements and omissions," which are "'likely material to reasonable investors.'"  *Id.* (citing *Khoja*, 899 F.3d at 1013).  Ultimately, "whether Orexigen may not have had an affirmative duty to disclose information about its relationship with Takeda, does not mean that such information does not 'relate back to the fraud.'"  *Id.* at 14 (footnote omitted).

/ / /

In their Reply, Moving Defendants argue that none of the reasons why the March 3, 2015 misstatements are materially false or misleading, as alleged in the CAC, are related to the purported failure to provide notice of the March 3, 2015 8-K to Takeda.  Reply at 2–3.  This "failure to allege that the March 3 8-K was false or misleading because of anything said or not said about Takeda is dispositive."  *Id.* at 4.  Moving Defendants further argue that, because Lead Plaintiff's sole loss causation theory pleaded in the CAC is a market-revelation theory, Lead Plaintiff cannot rely on a foreseeable consequences and/or outcomes theory.  Reply at 5; *see id.* at n.4.  Even so, Lead Plaintiff's argument that the May 12, 2015 *Bloomberg* article establishes that Takeda's actions related back to the decision to publish the unreliable interim LIGHT Study data is nothing but unsupported speculation that does not satisfy the pleading requirements of *Twombly*.  *Id.* at 5–7; *see also id.* at 7 n.7.

Having carefully reviewed the pleadings and the Parties' arguments, the Court agrees that the facts currently alleged in the CAC, viewed in the light most favorable to Lead Plaintiff, simply do not allege a link sufficient for the Court to find that the May 12, 2015 *Bloomberg* article was a "correction" of any false or misleading statements or omissions made on March 3, 2015, or that the *Bloomberg* article "relates back" to the March 3, 2015 statements or omissions.  The Court agrees with Moving Defendants that Lead Plaintiff's argument that Takeda's decision to send a letter on May 12, 2015 instituting dispute resolution proceedings against Orexigen necessarily relates back to Orexigen's failure to disclose the unreliability of the 25% LIGHT Study data is unsupported.

As the Ninth Circuit stated in *Metzler Investments GMBH v. Corinthian Colleges, Incorporated*:

> [W]hile the court assumes that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal.  The TAC's allegation that the market understood the June 24 and August 2 disclosures as a revelation of Corinthian's systematic manipulation of student

> enrollment is not a "fact."  It is an inference that Metzler believes is warranted from the facts that are alleged.   But Corinthian persuasively explains why this is not the case.

540 F.3d 1049, 1064–65 (9th Cir. 2008) (citing *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir. 1996)).  On the facts presently alleged in the CAC, the Court simply cannot accept as plausible the chain of inferences necessary to permit the May 12, 2015 *Bloomberg* article to relate back to the March 3, 2015 statements or omissions at issue.  The May 12, 2015 *Bloomberg* article does not identify what "material breach" of Orexigen and Takeda's agreement led Takeda to institute dispute resolution proceedings against Orexigen.  *See* Reply at 5–6; *see also* Defs.' Req. Ex. D.  Lead Plaintiff claims there can be "no other reason" why Takeda would have resorted to this action at this time.  Opp'n at 17 (emphasis omitted).  But the Court does not find this inference credible.  More than nine weeks had passed between the March 3, 2015 disclosures and Takeda's sending of the letter alleging a breach of its agreement with Orexigen on May 12, 2015.  *See* Defs.' Req. Ex. D.  It is unlikely Takeda would have waited more than two months to send a letter alleging a breach were the March 3, 2015 disclosures the trigger for the letter.  Accordingly, the Court further finds that Lead Plaintiff has failed to adequately plead that the May 12, 2015 *Bloomberg* article relates back to the allegedly misleading statements or omissions from March 3, 2015 in such a way as to satisfactorily plead loss causation.

## C.    *Lead Plaintiff's Notices of Supplemental Authority*

The four notices of supplemental authority filed by Lead Plaintiff do not alter the Court's view that the allegations of the CAC are insufficient to state a claim to the extent they rely on linking the May 12, 2015 *Bloomberg* article to any misstatements or omissions from March 3, 2015.[8]

---

[8] The Court notes that Moving Defendants objected to Lead Plaintiff's Second Notice for exceeding "[t]he purpose and permissible scope of a notice of supplemental authorities."  Resp. to 2d Not. of Supp. Auth. at 1.  While Lead Plaintiff does use its Notices to provide further arguments and commentary, Moving Defendants rebutted those arguments, at least as to the first two Notices and the fourth Notice, and had an

Lead Plaintiff's First Notice concerns *Karinski v. Stamps.com*, Case No. 19-cv-1828-MWF (SKx), 2020 WL 281716 (C.D. Cal. Jan. 17, 2020). *See generally* 1st Not. of Supp. Auth. However, *Karinski* is distinguishable from the facts before this Court. First, in *Karinski*, the court determined that Stamps.com had a duty to disclose USPS's opposition to Stamps.com's reseller program, and therefore had made a misleading statement, because it "touted its strong relationship with USPS and USPS's approval of Stamps' business model." 2020 WL 281716, at *12. Here, Defendants made no misleading statement because there are not sufficient allegations in the CAC to infer that Orexigen had a duty to disclose whether it had informed Takeda in advance that it was going to publish the 25% interim LIGHT Study results in its March 3, 2015 8-K. *See supra* at 16–17. Moreover, the corrective disclosures at issue in *Karinski* pertained directly to the alleged misstatements or omissions, as the first announcement concerned the termination of Stamps.com's exclusive relationship with USPS, "which itself was the subject of the alleged false statements," and the second announcement concerned the reseller program that was allegedly fraudulent. 2020 WL 281716, at *17–18. Here, the connection between the alleged misstatements or omissions and the alleged corrective disclosure, however, is too tenuous to adequately plead loss causation. *See supra* at 18–22.

Lead Plaintiff's Second Notice concerns *In re Twitter, Inc. Securities Litigation*, Case No. 16-cv-05314-JST, 2020 WL 4187915 (N.D. Cal. Apr. 17, 2020). *See generally* 2d Not. of Supp. Auth. Again, however, the Court finds the facts in *Twitter* distinguishable. There, the court concluded that there could be a duty to disclose declining DAU/MAU trends in light of Twitter's statements that, "[i]n our more mature markets, we have very high DAU to MAU, 50% plus," 2020 WL 4187915, at *7 (internal quotation marks omitted); "our MAU trend has already turned around," *id.* at *9 (same); and "DAU to MAU

---

opportunity to do so regarding the third. Ultimately, while the Court has reviewed the Parties' arguments, it has conducted its own analysis of the authorities brought to its attention in the Notices.

ratios in the quarter were similar to what they were by market relative to Analyst Day," *id.* at *11 (same). Thus, Twitter had touted information that potentially required further disclosure. The Court here, on the other hand, has found that not to be the case. *See supra* at 16–17. Moreover, as relevant to loss causation, the corrective disclosures directly concerned MAUs and/or DAU/MAU ratios, making clear the relationship of these statements to the omission of the declining DAU/MAU trends. *See* 2020 WL 4187915, at *15–18. But, as the Court here has concluded, Lead Plaintiff has failed to adequately allege that the disclosures in the May 12, 2015 *Bloomberg* article adequately relate back to any of the alleged omissions or misstatements from March 3, 2015. *See supra* at 18–22.

Lead Plaintiff's Third Notice concerns *In re WageWorks, Inc., Securities Litigation*, Case No. 18-CV-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020). *See generally* 3d Not. of Supp. Auth. Again, the Court finds the relevant facts to be distinguishable. In *WageWorks*, the lead plaintiffs alleged that, "[b]etween August 2016 and February 2017, WageWorks improperly recognized revenue from the OPM contract, even though administration of benefits had not begun," and "failed to write down the value of . . . a software platform" that was no longer required by a client. 2020 WL 2896547, at *1. In allegedly inflated SEC filings, several of the defendants "made statements highlighting the benefits of the OPM contract and certifying that WageWorks' financial reporting controls were adequate." *Id.* However, after KPMG refused to certify WageWorks' 2017 Annual Report, WageWorks issued a press release indicating "that WageWorks' previous controls were inadequate due to the 'tone at the top' and that previous financial statements 'should no longer be relied upon.'" *Id.* at *2. And, in its 2017 Form 10-K, WageWorks acknowledged that "'material weaknesses in internal controls' . . . led to false material statements in 2016 and 2017, and "'[i]n the second quarter of 2016, the client notified [WageWorks] that it no longer required the services,' which rendered the [software platform]'s value 'unrecoverable.'" *Id.* Thus, in *WageWorks*, the alleged corrective disclosures correlated to the allegedly inflated revenue reporting. That is not the case here. *See supra* at 18–22.

Finally, Lead Plaintiff's Fourth Notice concerns *In re BofI Holding, Inc. Securities Litigation*, No. 18-55415, __ F.3d __, 2020 WL 5951150 (9th Cir. Oct. 8, 2020).  *See generally* 4th Not. of Supp. Auth.; Reply ISO 4th Not. of Supp. Auth.  Once more, the Court finds the facts of *BofI* distinguishable.  First, in *BofI*, "the shareholders allege that defendants made false or misleading statements touting the bank's conservative loan underwriting standards, its effective system of internal controls, and its robust compliance infrastructure." 2020 WL 5951150, at *2.  BofI was not accused of misleading omissions, so the issue here of a failure to allege adequately a duty to disclose was absent.

Second, in *BofI*, the alleged corrective disclosure was "a whistleblower lawsuit filed against BofI by Charles Erhart, a former mid-level auditor at the company." *Id.* at *3.  The Ninth Circuit found that "[t]he allegations of egregious wrongdoing in the Erhart lawsuit, if accepted as true, unquestionably revealed to the market that at least some of BofI's alleged misstatements were false." *Id.* at *6.  For instance, one of the allegations was "that [Erhart] personally prepared a memorandum . . . which identified roughly 30% of BofI's customers as 'bad,' meaning the customers had red flags such as suspiciously high cash balances, social security numbers that did not match any public records, and, in one instance, the social security number of a dead person," but "when he gave the list to his superior, Senior Vice President John Tolla, Tolla demanded that the audit committee alter the list and give the altered version to the OCC." *Id.* at *6.  Thus, there's a clear connection between the alleged misleading statements and the correcting disclosure.  While the Ninth Circuit noted that, to relate back, "a corrective disclosure need not be a mirror image of the prior misstatement," *id.* at *6 n.3 (citing *In re Williams Sec. Litig.—WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)), the alleged corrective disclosure here bears almost no relation to the alleged misstatement or omission, and it would require the Court to accept unsupported and implausible inferences to find a causal connection between the alleged loss and the statements.  Thus, this is more a case of "'asserting that where there is smoke, there must be fire.'" *Id.* at *8 (quoting *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir.

///

2017)).   Accordingly, *BofI* does not help Lead Plaintiff on the facts presently pleaded in the CAC.[9]

Thus, in light of Lead Plaintiff's failure to allege adequately that the May 12, 2015 *Bloomberg* article relates back to a material misrepresentation or omission of fact from March 3, 2015, the Court **GRANTS** Moving Defendants' Motion.

### D.    Leave to Amend

Moving Defendants urge the Court to deny leave to amend, "as Plaintiff could never allege a cognizable fraud claim based on this theory."  Mot. at 14.  While the Court is skeptical that Lead Plaintiff will be able to allege adequately that the May 12, 2015 *Bloomberg* article relates back to the alleged misrepresentations or omissions from March 3, 2015, the Court also is not convinced that it is an impossibility, and Lead Plaintiff has not yet had an opportunity to amend these allegations.  Thus, the Court will grant Lead Plaintiff one final opportunity to amend.  Accordingly, the Court **DISMISSES** Plaintiff's claims to the extent they rely on a connection between the May 12, 2015 *Bloomberg* article and the March 3, 2015 misleading statements and/or omissions, but will do so **WITHOUT PREJUDICE**.

### CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Moving Defendants' Request to Consider Materials Incorporated by Reference (ECF No. 114-9) and **GRANTS** Moving Defendants' Motion (ECF No. 114).  Lead Plaintiff **MAY FILE** an amended consolidated complaint within <u>thirty (30) days</u> of the date on which this

/ / /

---

[9] Lead Plaintiff also makes much of the fact that, in *BofI*, the Ninth Circuit held that allegations in a lawsuit alone can serve as a corrective disclosure, and there need not be an additional disclosure to confirm the truth of those allegations.  *See id.* at *7.  Lead Plaintiff contends that Takeda, like Erhart, had "firsthand knowledge" of the alleged misconduct.  4th Not. of Supp. Auth. at 1.  But the Court finds distinguishable allegations in a lawsuit, made by a person with firsthand knowledge and publicly filed for all to see, and an article written by a person without firsthand knowledge reporting on the mere sending of, and not the specific allegations in, a demand letter, even if the demand letter in question came from someone with firsthand knowledge of the alleged misconduct.

Order is electronically docketed.  *Should Lead Plaintiff fail to file an amended complaint by this date, this action will proceed on his surviving causes of action.*

**IT IS SO ORDERED.**

Dated:  November 2, 2020

Hon. Janis L. Sammartino
United States District Judge

15-CV-540 JLS (JLB)